707594.5

WATANABE ING LLP
A Limited Liability Law Partnership

SETH M. REISS         #2774-0
SUMMER H. KAIAWE  #9599-0
First Hawaiian Center
999 Bishop Street, Suite 1250
Honolulu, Hawaii 96813
Telephone:  (808) 544-8300
Facsimile:   (808) 544-8399
E-mails:      sreiss@wik.com
                   skaiawe@wik.com

Attorneys for Defendant
**HAWAIIAN SPRINGS, LLC**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VINCENT KHOURY TYLOR,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>HAWAIIAN SPRINGS, LLC, a<br>Delaware Limited Liability  Company;<br>JOHN DOES 1-10;  JANE DOES 1-10;<br>DOE CORPORATIONS 1- 10;<br>DOE PARTNERSHIPS 1-10; and<br>DOE ASSOCIATIONS 1-10,<br><br>　　　　Defendants. | CIVIL NO.  17-00290 HG-KJM<br>(Copyright Infringement)<br><br>DEFENDANT HAWAIIAN<br>SPRINGS, LLC'S MEMORANDUM<br>IN OPPOSITION TO PLAINTIFF'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT FILED<br>APRIL 24, 2019 [DKT #63];<br>CERTIFICATE OF SERVICE<br><br>**HEARING:**<br>DATE:  June 17, 2019<br>TIME:  10:30 AM<br>JUDGE:  Honorable Helen Gillmor<br><br>NON-JURY TRIAL:<br>SEPTEMBER 24, 2019 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................1

II.  RELEVANT FACTUAL BACKGROUND .................................3

    A.  Tylor's Photographs and Legal Claims................................3

    B.  Hawaiian Springs .................................................................4

    C.  The Seven Pools and Waimea Canyon Images Posted to Hawaiian Springs' Facebook Page .......................................5

    D.  The Akaka Falls Image Posted to Hawaiian Springs' Pinterest Page...6

    E.  The Sources of the Tylor Images Posted to Hawaiian Springs' Social Media...................................................................7

III.  RELEVANT PROCEDURAL BACKGROUND ..........................9

IV.  LEGAL STANDARD FOR SUMMARY JUDGMENT ..............10

V.  ARGUMENT...........................................................................11

    A.  Hawaiian Springs Should Be Permitted to Complete Its Discovery Into the Integrity of Tylor's Copyright Registration Certificate VA 1-696-55 Prior to Any Decision on the Issue of Liability For Copyright Infringement.......................................................11

    B.  Hawaiian Springs' Unauthorized Use of Tylor's Akaka Falls Image was a Permissible Fair Use, Precluding Summary Judgment on the Issue of Liability for Copyright Infringement  for the Akaka Falls Image. .................................................................................14

    C.  There is Substantial Evidence that Hawaiian Springs' Unauthorized Use of Tylor's Waimea Canyon Image was Innocent or, if Not Innocent, was Neither Intentional nor Reckless...................................17

VI.  CONCLUSION.......................................................................21

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986) ................................................................................10

<u>Campell v. Acuff-Rose Music, Inc.</u>,
510 U.S. 569 (1994) ........................................................................ 15, 16

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986) ................................................................................10

<u>Croley v. Matson Navigation Company</u>,
434 F.2d 73 (5th Cir. 1970) ....................................................................17

<u>Fourth Estate Public Benefit Corp. v. Wall-Street.com</u>,
___ U.S. ____, 139 S. Ct. 881, 2019 WL 1005829 (2019) ....................................11

<u>Iowa State Univ. Research Found., Inc. v. American  Broadcasting Cos.</u>,
621 F/2d 57 (2d Cir. 1980) ....................................................................15

<u>Mathews Conveyer Co. v. Palmer-Bee Co.</u>,
135 F2d 73 (6th Cir. 1943) ....................................................................16

<u>Pacific Stock, Inc. v. Kona Kustom Tours, LLC</u>,
2014 WL 7338731 (D. Haw. 2014) ........................................................17

<u>Palmer/Kane LLC v. Rosen BookWorks LLC</u>,
188 F.Supp.3d 347 (S.D.N.Y. 2016) ......................................................12

<u>Therasene, Inc. v. Becton, Dictinson & Co.</u>,
649 F.3d 1276 (Fed. Cir. 2011)................................................................11

<u>U.S. ex.rel. Bernard v. Casino Magic Corp.</u>,
293 F.3d 419 (8th Cir. 2002) ..................................................................13

Whimsicality, Inc. vs. Rubie's Costumer Co., Inc.,
891 F.2d 452 (2nd Cir. 1989)......................................................................11

**Statutes**

17 U.S.C. § 411(a) ...................................................................................11

17 USC § 411(b)(1)..................................................................................11

**Other Authorities**

10B A. Wright, A, Miller & M. Kane,
*Federal Practice and Procedure* § 2730 (4th ed. 2019).........................................17

10B A. Wright, A, Miller & M. Kane,
*Federal Practice and Procedure* § 2740 (4th ed. 2019)...................... 10, 11, 13, 14

10B A. Wright, A. Miller & M. Kane,
*Federal Practice and Procedure* § 2741(4th ed. 2019)..........................................14

*Amendments of the Federal Rules of Civil Procedure*, 1961-1963 (II),
   77 Harv.L.Rev. 801, 826 (1964)...........................................................13

Compendium of U.S. Copyright Office Practices § 1116 (3d ed.)..........................12

**Rules**

Fed. R. Civ. P. 56(c)...............................................................................10

Fed. R. Civ. P. 56(d) ............................................................... 10, 13, 14

**Treatises**

2 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 7.02[A] (Rev. Ed. 2019) ....................................................19

2 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 7.20[B][1] (Rev. Ed. 2019)...............................................11

3 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 12.08 (Rev. Ed. 2019)......................................................11

4 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 13.05 .................................................................................15

4 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 13.05[A]...........................................................................16

4 M. Nimmer & D. Nimmer,
*Nimmer on Copyright* § 13.08[A]...........................................................................18

**Regulations**

37 CFR § 202.3(b)(10) (July 1, 2009) ....................................................................12

**DEFENDANT HAWAIIAN SPRINGS, LLC'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT FILED APRIL 24, 2019 [DKT #63]</u>**

## I.   <u>INTRODUCTION</u>

This is an action for copyright infringement and for the removal/alteration of copyright management information ("CMI") concerning three photographs the copyright in which is claimed by Plaintiff VINCENT KHOURY TYLOR ("Plaintiff" or "Tylor").  Tylor alleges that Defendant HAWAIIAN SPRINGS, LLC ("Defendant" or "Hawaiian Springs") used the three images on Hawaiian Springs' social media pages over a period of almost seven years, without his permission.  Tylor also alleges, in the case of two of the images, that Hawaiian Springs intentionally removed or altered copyright management information from the photographs before posting them.

What the evidence is expected to show, however, is that the photos in question were, in two cases, sourced and posted to Hawaiian Springs' social media pages by a professional public relations firm that had been retained by Hawaiian Springs to promote its business and products; and in one case, re-pinned by a Hawaiian Springs' employee from a Pinterest site of a marketing student who had used Tylor's photo to create a mock ad for Hawaiian Springs' bottled water product.  Hawaiian Springs' also believes that the three photos were promptly removed from its social media accounts once placed on notice that the photos were being used without the photographs permission.

<u>There is no evidence that Hawaiian Springs knew, or even should have known, that the photographs in question had been used without the permission or authority of the copyright owner.  There is also no evidence that Hawaiian Springs removed or altered CMI.</u>

In the subject motion for partial summary judgment Tylor asks this Court to enter judgment on the issue of liability for copyright infringement for each of the three images Hawaiian Springs is alleged to have used without permission and, in addition, to make a finding of willful copyright infringement in regard to one of the three images.  Plaintiff's Motion for Partial Summary Judgment Against Defendant Hawaiian Springs, LLC [Dkt. 63-1 at 1-2].  However, Tylor's motion is premature in regards to the issue of liability because Hawaiian Springs has not yet had the opportunity to complete discovery regarding the integrity of the copyright registration certificate upon which Tylor's claims of copyright infringement are based.  Additionally, Tylor's motion as to Hawaiian Springs' liability for the image referred to as "B-07 Akaka Falls Hor" should be denied for the reason that there is substantial evidence that Hawaiian Springs' use of this image was "fair use."  Finally, Tylor's motion requesting a finding of willful copyright infringement in regards to the image referred to as "K-20 Waimea Canyon" should be denied because it is an issue going to state of mind that requires consideration of all available facts, and also because there is substantial evidence that Hawaiian

Springs' unauthorized use of the image was innocent or, if not innocent, was neither willful nor reckless.

## II.   **RELEVANT FACTUAL BACKGROUND**

### A.   **Tylor's Photographs and Legal Claims**

Tylor alleges that Hawaiian Springs used three of Tylor's images, without his permission, by posting the images to Hawaiian Springs' Facebook and Pinterest pages.  Tylor claims Hawaiian Springs' posted the image referred to as M-11 7 Pools Waterfalls ("Seven Pools") to its Facebook page during October 2010; posted the image referred to as K-20 Waimea Canyon ("Waimea Canyon") to its Facebook page during September 2011; and posted the image referred to as B-07 Akaka Falls Hor ("Akaka Falls") to its Pinterest account sometime prior to July 2017.  See First Amended Complaint ("FAC") filed herein July 20, 2017 [Dkt. 10], at 6-8 at ¶¶ 14 through 16 and Exhibits B through C thereto, including copies of the three (3) images at issue, which FAC is attached to Hawaiian Springs' Concise Statement of Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment Against Defendant Hawaiian Springs, LLC ("CSFO") as **Exhibit "A"** to the Declaration of Seth M. Reiss (the "Reiss Decl.") attached thereto.

Tylor further alleges that Hawaiian Springs obtained the images from Tylor's website and, in the case of the Seven Pools and Akaka Falls images, intentionally removed or altered Tylor's CMI, or used these two images knowing the CMI had been removed or altered, and provided its own false CMI.  Exh A,

FAC, at 8-9 at ¶¶ 18 and 19.  Based on the alleged unauthorized use of the images, Tylor seeks monetary damages, including statutory damages in amounts up to $150,000 per image, and an award of attorney's fees.  Id. at 16-17 at ¶¶ C-D.

Notwithstanding Tylor's claim that the images were posted to Hawaiian Springs' social media as early as October 2010, Tylor did not provide Hawaiian Springs notice of his claims until August 8, 2016, when Tylor's counsel sent Hawaiian Springs a cease and desist letter demanding the take down of two of Tylor's images from Hawaiian Springs' Facebook webpage.  Exh A, FAC at 7 at ¶ 15 (regarding take down letters).

### B.   Hawaiian Springs

Hawaiian Springs is a manufacturer and distributor of bottled water sourced from an aquifer well on the Big Island of Hawaii.  Affidavit of Tamiko Broms ("Broms Aff."), attached to the CSFO, at ¶ 3.  Hawaiian Springs has undergone significant structural, ownership and management changes during the period October 2011, when Hawaiian Springs is first alleged to have used Tylor's images without authorization, until now.  Id.

In 2010, Hawaiian Springs was owned and operated by an individual by the name of Rick Hadley.  Rick Hadley died in or around September 2013, after which Hawaiian Springs was operated by Mr. Hadley's estate.  In July 2015, Rick Hadley's estate sold Hawaiian Springs to Laulima International, Inc., a Delaware corporation.  Id. ¶ 4.

During the period from July 2015 through July 2017, Hawaiian Springs was operated by Al Kam and Fred Parr who together held a 15% share in the company through their ownership in Laulima International. Broms Aff., at ¶ 4. The majority 85% interest of Laulima International was held by John H. Yamamoto, the father of Hawaiian Springs' current CEO Tamiko Broms. Id. at ¶ 5.

On December 29, 2017, Hawaiian Springs filed for Chapter 11 bankruptcy. Id. at ¶ 6. On January 14, 2019, Hawaiian Springs emerged from bankruptcy after being purchased by Pemco, Ltd., a company currently owned by John H. Yamamoto's estate. Id.

The current owners, managers and employees of Hawaiian Springs are entirely different from the owners, managers and employees in place at the time Tylor's three (3) images were alleged to have been posted to Hawaiian Springs' social media accounts; and they are also entirely different from the owners, managers and employees in place at the time Tylor sent his cease and desist letters and at the time Tylor filed the subject lawsuit.

### C. The Seven Pools and Waimea Canyon Images Posted to Hawaiian Springs' Facebook Page

During the period the Seven Pools and Waimea Canyon images were posted to Hawaiian Springs' Facebook page, Hawaiian Springs' social media accounts were being managed by outside public relations vendors. Affidavit of Margaret Fuentes ("Fuentes Aff."), attached to the CSFO at ¶ 5. The Seven Pools and

5

Waimea Canyon images were both sourced by, and posted to, Hawaiian Springs' Facebook page by one of the outside vendors retained at the time of their postings. Fuentes Aff., at ¶ 7.  Hawaiian Springs' employees did not source or post these two images.  Id.  Margaret Fuentes, the Hawaiian Springs' marketing director who supervised social media at the time of the images postings, assumed that the public relations professionals who posted content to Hawaiian Springs' social media accounts did so with all necessary permissions.  Id.  Ms. Fuentes did not learn that the images belonged to Tylor, and had been posted without Tylor's permission, until many years later, after she had left her employment with Hawaiian Springs. Id. at ¶ 9.

### D.     The Akaka Falls Image Posted to Hawaiian Springs' Pinterest Page

The image posted to Hawaiian Springs' Pinterest page that incorporated Tylor's Akaka Falls image in the manner depicted in Exhibit "C" to the FAC [Dkt. 10], was created in or around April 2012 by Brea Aamoth.  Declaration of Brea Aamoth ("Aamoth Decl."), attached to the CSFO at ¶ 3.  Ms. Aamoth, a college student at the time, created the image as part of a homework assignment for an advertising class.  Id.  Ms. Aamoth created the image as a mock advertisement for the Hawaiian Springs bottled water brand and posted it to her own Pinterest page.  Id.

Hawaiian Springs' marketing director, Ms. Fuentes, came across the mock advertisement on Brea Aamoth's Pinterest page. Fuentes Aff., at ¶ 8. It caught Ms. Fuentes attention because it exhibited the Hawaiian Springs' product and logo, and had language promoting Hawaiian Springs' bottled water product. Id. Ms. Fuentes re-pinned Ms. Aamoth's mock advertisement to Hawaiian Springs' Pinterest page consistent with her understanding of Pinterest's policies and practices. Id. As previously discussed, Ms. Fuentes did not learn that the images belonged to Tylor, and had been used by Ms. Aamoth without Tylor's permission, until many years later, after Ms. Fuentes had left her employment with Hawaiian Springs. Id., at ¶ 9.

### E.      The Sources of the Tylor Images Posted to Hawaiian Springs' Social Media

Tylor alleges in his complaint, as well as in the subject motion for partial summary judgment, that Hawaiian Springs copied the three images from Tylor's commercial licensing website, and then reproduced the three images on Hawaiian Springs' social media pages, sometime first removing or altering Tylor's signature. Exh. A, FAC, at ¶¶ 18 to 20 at pp. 8-10; Memorandum in Support of Plaintiff's Motion [Dkt. 63-1] ("Plaintiff's Mem."), pp. 11, & 20-24; Plaintiff's Separate Concise Statement of Facts [Dkt 64] ("CSOF"), at Nos. 19-20. The evidence indicates otherwise.

Hawaiian Springs retained expert Michael McMurdo of Cetra Technology to, *inter alia*, determine how the three Tylor images were obtained by Hawaiian Springs.  Declaration of Michael McMurdo attached to the CSFO; Expert Report of Michael McMurdo dated April 24, 2019 ("McMurdo Report") attached to the CSFO as **Exhibit "B"**.  Using several tools useful for locating images on the Internet, Mr. McMurdo concluded that: the Seven Pools image was most likely taken from an April 13, 2008 post on a "free wallpaper" site called PortaleClaufont; the Waimea Canyon image was most likely taken from a third party site, other than Tylor's licensing site, that no longer exists on the Internet; and the Akaka Falls image was also most likely taken from a third party website other than Tylor's commercial site.  Exh. B, McMurdo Report, at 2-3.

Given Mr. McMurdo's study and findings, that the condition of Tylor's three images as posted to Hawaiian Springs social media sites do not match the condition of the same images as found on Tylor's commercial licensing website, while they do match the condition of Tylor's images on third party sites in at least two cases, Tylor's claim that Hawaiian Springs copied the images directly from Tylor's commercial website, and altered or removed Tylor's signature prior to posting the image to its social media pages, is without evidentiary support and cannot be sustained.

## III.   RELEVANT PROCEDURAL BACKGROUND

This action was filed on June 16, 2017, and then stayed on December 29, 2017, as a result of Hawaiian Springs having filed for bankruptcy protection. Reiss Decl. at ¶ 5.  Following the lifting of the bankruptcy stay, on August 13, 2018, to allow this case to proceed limited to recovery from Hawaiian Springs' insured within the policy limits,[1] and the withdrawal and substitution of Hawaiian Springs' counsel on January 10, 2019 [Dkt 48], the parties have been diligently engaged in discovery. Id. at ¶ 6.  Written discovery has been exchanged and depositions scheduled but not yet taken. Id. at ¶ 7.  Hawaiian Springs has a pending motion to compel discovery from Tylor, which motion was advanced and is now set to be heard May 17, 2019.  EO filed May 1, 2019 [Dkt. # 77].  Tylor's deposition is currently set for May 23, 2019. Id. at ¶ 8.  The discovery cut off is not until July 26, 2019. Id. at ¶ 9.  Second Amended Rule 16 Scheduling Order filed February 4, 2019 [Dkt. 56]. Id. at ¶ 10.  Discovery is on-going. Id.

The Notice of Hearing on Motion issued April 25, 2019 [Dkt. 66] set Hawaiian Springs' deadline to file its opposition to the subject motion for partial summary judgment as May 8, 2019.  Id. at ¶ 11.  In view of the ongoing discovery, Hawaiian Springs requested that Tylor agree to continuing the deadline for

---

[1]  See Second Stipulation and Order Granting Relief from Automatic Stay filed August 28, 2018 in In re Hawaiian Springs, LLC, Bk. No. 17-01348 in the United States Bankruptcy Court for the District of Hawaii, and filed herein as Dkt. 36-1, a copy of which is attached to the CSFO as **Exhibit "C"** for ease of reference.

Hawaiian Springs to file its opposition to Tylor's motion so that Hawaiian Springs could complete its discovery regarding the integrity of Tylor's copyright registration.  Reiss Decl., at ¶ 12. Tylor declined to agree to such a continuance. Id.

## IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986).  Therefore, a motion for summary judgment should only be granted if the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

Where the proof of a genuine issue of material fact is not yet available to the party opposing a Rule 56 motion, a decision on the motion should be delayed or denied pursuant to Rule 56(d), Fed. R. Civ. P.  "Rule 56(d) allows a party who has no specific material contradicting its adversary's presentation to survive a summary-judgment motion by presenting valid reasons justifying his failure of proof."  10B A. Wright, A, Miller & M. Kane, *Federal Practice and Procedure*

§ 2740 (4th ed. 2019).  This is, in particular, true where the proof is in the

exclusive possession of the party seeking summary judgment.  10B A. Wright, A,

Miller & M. Kane, *Federal Practice and Procedure* § 2740 (4th ed. 2019) and

cases cited in notes 18 through 20.

## V.   <u>ARGUMENT</u>

### A.   **Hawaiian Springs Should Be Permitted to Complete Its Discovery Into the Integrity of Tylor's Copyright Registration Certificate VA 1-696-55 Prior to Any Decision on the Issue of Liability For Copyright Infringement**

A valid copyright registration is a pre-requisite to an infringement action.  17

U.S.C. § 411(a); <u>Fourth Estate Public Benefit Corp. v. Wall-Street.com</u>, ___ U.S.

____, 139 S. Ct. 881, 2019 WL 1005829 (2019).  In other words, a valid copyright

registration certificate for a given copyrighted work is a jurisdictional requirement

to initiate and maintain an infringement action in regard to that work.  3 M.

Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.08 (Rev. Ed. 2019).

Anyone who makes a material misstatement to the Copyright Office in the

context of an application, intending to mislead the Copyright Office thereby,

defrauds the Copyright Office, invalidating the copyright registration certificate so

obtained.  2 M. Nimmer & D. Nimmer, *supra* § 7.20[B][1]; <u>Therasene, Inc. v.

Becton, Dictinson & Co.</u>, 649 F.3d 1276, 1316 n.4 (Fed. Cir. 2011); <u>Whimsicality,

Inc. vs. Rubie's Costumer Co., Inc.</u>, 891 F.2d 452 (2nd Cir. 1989); 17 USC §

411(b)(1); Palmer/Kane LLC v. Rosen BookWorks LLC, 188 F.Supp.3d 347 (S.D.N.Y. 2016).

In this case, Tylor relies on Copyright Registration Certificate VA 1-696-555 effective December 17, 2009, supplemented by Registration Certificate VA 1-432-741 effective June 20, 2011, for each of his three copyright infringement claims (one claim for each image).  Exhibit "A" to CSOF [Dkt. 64-3].  Together, these certificates identify 124 separate photographs.  Id.  While the applicable rules of the Copyright Office during the time Tylor's applications for registration were submitted permit group registration of published photographs in the context of a single copyright registration application, thereby saving the applicant significant time and fees relative to individual applications, the rules for group registrations have a number of strict requirements. One such requirement is that all grouped photographs be first published during the same calendar year.  See, e.g., 37 CFR § 202.3(b)(10) (July 1, 2009); Compendium of U.S. Copyright Office Practices, § 1116 (3d ed.).

Hawaiian Springs has not had the opportunity to investigate the circumstances of Tylor's copyright registration application and, thereby, the integrity of the resulting registration upon which Tylor's claims for infringement of his three photographs are premised.  Reiss Decl., at ¶ 13.  Facts concerning the circumstances surrounding Tylor's copyright registration application are exclusively within the possession of Tylor.  Id.  Tylor's deposition is currently set

for May 23, 2019.  Reiss Decl., at ¶ 9.  Hawaiian Springs expects that Tylor's

deposition is likely to provide facts regarding the circumstances surrounding

Tylor's copyright registration application sufficient to determine whether or not

there is a genuine issue of material facts concerning the integrity of Tylor's

Copyright Registration Certificate VA 1-696-555.  Id. at ¶ 14.

> Under rule 56(f)[now Rule 56(d)] the adversary need not even present
> the proof creating the minimal doubt on the issue of fact which
> entitles him to a full trial; it is enough if he shows the circumstances
> which hamstring him in presenting that proof by affidavit in
> opposition to the motion.

10B A. Wright, A, Miller & M. Kane, *supra* § 2740 (4th ed. 2019), quoting

Kaplan, *Amendments of the Federal Rules of Civil Procedure*, 1961-1963 (II), 77

Harv.L.Rev. 801, 826 (1964).

> The purpose of subdivision (d) is to provide an additional safeguard
> against an improvident or premature grant of summary judgment and
> the rule generally has been applied to achieve that objective.
> Consistent with this purpose, courts have stated that the provision
> should be applied with a spirit of liberality.

Id. (citing U.S. ex.rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 426 (8th Cir.

2002).

> One of the most common reasons offered under Rule 56(d) for being
> unable to present specific facts in opposition to a summary-judgment
> motion is insufficient time or opportunity to engage in discovery. A
> major objective of subdivision (d) has been to ensure that a diligent
> party is given a reasonable opportunity to prepare the case.  In
> keeping with this philosophy, the granting of summary judgment will
> be held to be error when discovery is not yet completed, and summary
> judgment has been denied as premature when the trial court
> determines that discovery is not finished.

> \*   \*   \*
> Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party. Indeed, the majority of the continuances granted under Rule 56(d) involve cases in which one party has exclusive knowledge of the relevant facts.

10B A. Wright, A. Miller & M. Kane, *supra* § 2741.

Here, where the information sought is exclusively within the possession of Tylor, the party seeking summary judgment, and where Hawaiian Springs has been diligent in engaging in discovery in a timely manner, there should be no question that Hawaiian Springs is entitled to have the judgment Tylor is seeking either delayed, or denied.  10B A. Wright, A, Miller & M. Kane, *supra* § 2740 (4th ed. 2019) and the cases cited in notes 18 through 20 thereto.

**B.    Hawaiian Springs' Unauthorized Use of Tylor's Akaka Falls Image was a Permissible Fair Use, Precluding Summary Judgment on the Issue of Liability for Copyright Infringement for the Akaka Falls Image.**

Tylor's Akaka Falls image was not used on the Hawaiian Springs' Pinterest page in its original format.  Instead, Tylor's Akaka Falls image was combined with a picture of Hawaiian Springs bottled water, a person's open mouth, Hawaiian Springs' logo, and text promoting the Hawaiian Springs' products, by marketing student Brea Aamoth, to create a mock advertisement homework assignment. Exhibit C to FAC [Dkt 10-3]; Aamoth Decl., at ¶ 3.  It was this mock advertisement that Brea Aamoth pinned to her Pinterest page which, when noticed

by Hawaiian Springs' marketing director, was re-pinned to Hawaiian Springs'

Pinterest page.  Aamoth Decl., at ¶ 3; Fuentes Aff., at ¶ 8.

While Tylor's Akaka Falls photograph, once pointed out, can be discerned in

the background of Brea Aamoth's mock advertisement, it would not be

recognizable as such to those not already intimately familiar with this particular

Tylor photo.  Ms. Aamoth's mock advertisement is itself a work of original

expression that projects an image very different from the image projected by

Tylor's underlying photograph.  Explained differently, Brea Aamoth's mock

advertisement transcends and transforms Tylor's photographs.  In the language of

copyright law, Brea Aamoth's mock advertisement is a defensible "fair use" of

Tylor's Akaka Falls image.

> In determining whether given conduct constitutes copyright
> infringement, the courts have long recognized that certain acts of
> copying are defensible as "fair use".  It has been said that the
> affirmative defense of fair use "permits courts to avoid rigid
> applications of the copyright statute when, on occasion, it would stifle
> the very creativity which that law is designed to foster."

4 M. Nimmer & D. Nimmer, *supra* § 13.05, quoting Iowa State Univ. Research

Found., Inc. v. American  Broadcasting Cos., 621 F/2d 57 (2d Cir. 1980), cited

with approval in, *inter alia,* Campell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577

(1994).

The Copyright Act codifies the fair use defense in its Section 107, directing the court to consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

In this case, the available evidence suggests that <u>all four factors favor a finding of fair use</u>.

Particularly striking is the "transformative" nature of the Ms. Aamoth's mock advertisement, the same criteria that the U.S. Supreme Court in <u>Campell v. Acuff-Rose Music, Inc.</u> emphasized as meeting the first element of the fair use test to find that 2 Live Crew's use of lyrics from Roy Orbison's rock ballad "Oh Pretty Woman" was a non-infringing fair use.

> Fair use is to be determined by a consideration of all the evidence . . . . Whether a particular use of a copyrighted article, without permission of the owner, is a fair use, depends upon the circumstances of the particular case. . . . [F]air use is to be determined by a consideration of all the evidence in the case . . . .

4 M. Nimmer & D. Nimmer, *supra* § 13.05[A] quoting <u>Mathews Conveyer Co. v. Palmer-Bee Co.</u>, 135 F2d 73, 85 (6th Cir. 1943).

Under the circumstances, in view of there being substantial evidence of record arising from the very mock advertisement upon which Tylor's relies for his Akaka Falls image copyright infringement claim that Hawaiian Springs' use of the

Tylor's image is a non-infringing fair use, Tylor's request for summary judgment on the issue of liability for this claim must be denied.

### C. There is Substantial Evidence that Hawaiian Springs' Unauthorized Use of Tylor's Waimea Canyon Image was Innocent or, if Not Innocent, was Neither Intentional nor Reckless.

In its motion, Tylor asks this Court to enter judgment in its favor on the issue of whether Hawaiian Springs' infringement of Tylor's Waimea Canyon image was intentional.[2]  Tylor's evidence of intentional intent is based solely upon the fact that a green border and Tylor's signature appear both on the image exhibited on Tylor's licensing website, and on the image that had been exhibited (albeit substantially illegibly) on Hawaiian Springs Facebook page.  Plaintiff's Memo [Dkt. 63-1] 21-24.

Any such judgment would be premature inasmuch as the issue of liability for infringement is premature as explained above.  Moreover, as this issue goes to Hawaiian Springs' state of mind, there is ample authority that a disposition in advance of trial is rarely appropriate. 10B A. Wright, A. Miller & M. Kane, *supra* § 2730, citing Croley v. Matson Navigation Company, 434 F.2d 73 (5th Cir. 1970).

---

[2] Tylor relies on the unpublished case of Pacific Stock, Inc. v. Kona Kustom Tours, LLC, 2014 WL 7338731 (D. Haw. 2014) for the legal standard for intentional infringement of copyright.  Plaintiff's Memo [Dkt. 63-1] at 20.  Not only is Pacific Stock an unpublished opinion, but it is a default judgment involving a website that had not removed the infringing images even at the time the motion for default judgment was being heard. The facts of that case could not be more different from the facts of this case.

Notwithstanding, Tylor's own evidence, in particular when considered with the Affidavit of Margaret Fuentes and the expert opinion of Michael McMurdo, raise genuine issues of material fact whether Hawaiian Springs' unauthorized use of Tylor's Waimea Canyon image was intentional, negligent or even innocent.

Although an innocent intent of the defendant will not constitute a defense to a finding of liability, it may bear upon the remedies available against such a defendant.  4 M. Nimmer & D. Nimmer, *supra* § 13.08[A].  One type of innocent infringement is wherein the "defendant's work is based upon a work furnished by a third party."  Id.   Here, Tylor's Waimea Canyon image was sourced, and posted to, Hawaiian Springs' Facebook account by a third party under circumstances suggesting that permissions for the image has been secured.  Fuentes Aff., at ¶ 7.

While Tylor claims Hawaiian Springs "copied image 'K-20 Waimea Canyon' directly from Plaintiff's own licensing website", Plaintiff's Memo [Dkt # 63-1], at 22, the evidence is otherwise.  First, after comparing the Waimea Canyon image on Tylor's licensing website with the image that had been on Hawaiian Springs' Facebook page, expert McMurdo concluded that the Hawaiian Springs' image had undergone transformations making Tylor's licensing website an unlikely immediate source of the photo.  Exh. B, McMurdo Report, at 3.

Second, Tylor's Waimea Canyon image was found by McMurdo on at least 18 different websites.  Id.  Tylor is also well aware that unauthorized copies of his images can be found throughout the Internet.  See, e.g., Tylor's Response to

Interrogatory 13, Defendant Hawaiian Springs First Request for Answers to Interrogatories from Vincent Khoury Tylor, attached to the CSFO as **Exhibit "D"**. <u>Tylor's claim that Hawaiian Springs' must have copied the Waimea Canyon image from his own licensing website is simply disingenuous.</u>

Third, Tylor himself acknowledges the possibility that a third party, and not Hawaiian Springs, acquired the unauthorized copies of his images and supplied them to Hawaiian Springs for use on Hawaiian Springs' social media.  In his Memorandum in Support of Motion, Tylor argues that Hawaiian Springs would be contributory or vicariously liable for infringement merely as the result of having the ability to supervise, and profit from, the infringing activities of another. Plaintiff's Memo [Dkt # 63-1] at 18.  That Tylor acknowledges the possibility that a third party sourced and posted his images to Hawaiian Springs' Facebook page raises, by itself, a factual inference against a finding that Hawaiian Springs' infringement of the Waimea Canyon image was intentional.

Fourth, the absence of any copyright notice on the authorized copies of Tylor's photos argues against a finding of intentional infringement.  As can be seen from the authorized copy of the Waimea Canyon photo appended as Exhibit "B" to the FAC [Dkt 10-2] at 2, Tylor does not affix copyright notice symbols to his photographs.  "A notice requirement has formed a part of every U.S. copyright statute since the original act of 1790."  2 M. Nimmer & D. Nimmer, *supra* § 7.02[A].

Among the principal functions of copyright notice is to "inform the public as to whether a particular work is copyrighted." H. Rep. to the 1909 Act, p. 143. While notice is no longer a requirement to the sustainability of a claim of copyright, this function of informing the public is preserved in Section 401(d) of the current act. Section 401(d) precludes a defendant's reliance "on a defense based upon innocent infringement" where appropriate notice has been placed on "copies to which a defendant in a copyright infringement suit had access. . . ." Tylor's omission of a copyright notice from his photos raises, in itself, a genuine issue of material fact as respects Hawaiian Springs' state of mind in posting, or maintaining, the Waimea Canyon image on its Facebook page.

Finally, Tylor himself concedes this issue in his memorandum in support of the instant motion when he states that "[a]bsent evidence uniquely within Hawaiian Springs' possession and control that its copy of this image was obtained elsewhere," Tylor is entitled to a presumption that Hawaiian Springs' acted intentionally. Plaintiff's Memo [Dkt 63-1] at 24. As explained previously, there is amble evidence that Hawaiian Springs did obtain the photo elsewhere: both evidence that the immediate source of the photo was Hawaiian Springs' public relations vendor, Fuentes Aff., at ¶¶ 7, 9; and before that, some third party website, McMurdo Report, at 3. As such, according to Tylor's own concession, the issue of whether Hawaiian Springs' unauthorized use of the Waimea Canyon image was intentional is not yet ripe for decision.

20

## VI.   **CONCLUSION**

Tylor's Motion for Partial Summary Judgment is premature.  Hawaiian Springs has been engaged in diligent discovery since this case was released from the bankruptcy stay late last year, and in advance of the July 26 discovery deadline, but has not yet had the opportunity to complete its investigation into the integrity of the copyright registration certificate upon which Tylor's copyright infringement claims are premised.  Under these circumstances, it is premature to expect Hawaiian Springs' to have a position on liability for infringement of the Seven Pools and Waimea Falls images.

With regard to the Akaka Falls image, there is substantial evidence of record upon which a trier of fact can conclude that Hawaiian Springs' use of this image was a fair use, precluding liability for copyright infringement of this image. It certainly cannot be said that there are no material facts in dispute as to whether Hawaiian Springs' use of the Akaka Falls image was a fair use.

Similarly, it cannot be said that there are no material facts in dispute as to whether Hawaiian Springs intentionally infringed upon Tylor's copyright in the Waimea Canyon image.  Rather, the evidence of record supports a conclusion that Hawaiian Springs' unauthorized use of the Waimea Canyon image was innocent or, if not innocent, at least neither intentional nor reckless.

Accordingly, based upon the above arguments, cited authorities, and the evidence of record in this case, Tylor's motion for partial summary judgment should be denied in all respects.

DATED: Honolulu, Hawaii, May 8, 2019.

/s/ Seth M. Reiss
SETH M. REISS, ESQ.
SUMMER H. KAIAWE, ESQ.
Attorneys for Defendant
**HAWAIIAN SPRINGS, LLC**